# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

UNITED STATES OF AMERICA,  §
§
§
v.  §  No. 4:21-cr-223-17
§  Judge Mazzant
CRYSTAL CROWDER,  §
§
*Defendant.*  §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #2140). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On April 21, 2022, the Grand Jury for the Eastern District of Texas, Sherman Division returned a 14-count First Superseding Indictment, which included a forfeiture notice, against Crystal "Cupcake" Crowder and 28 codefendants (Dkt. #84). Count 1 charged Defendant with Conspiracy to Possess with the Intent to Manufacture and Distribute 500 Grams or More of Methamphetamine and 50 Grams or More of Methamphetamine (Actual), in violation of 21 U.S.C. §§ 846, 841(a)(1), Counts 5 and 6 charged Defendant with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). Defendant was not named in the other counts nor the preceding indictment.

On November 10, 2022, the Grand Jury for the Eastern District of Texas, Sherman Division, returned a 14-count Second Superseding Indictment, which included a forfeiture notice, against Defendant and 31 codefendants (Dkt. #410). The end date of Count 1 was extended to

November 10, 2022, and Counts 5 and 6 remained the same. Defendant was not named in the other counts. On January 12, 2023, the Grand Jury for the Eastern District of Texas, Sherman Division, returned a 17-count Third Superseding Indictment, which included a forfeiture notice, against Defendant and 64 codefendants (Dkt. #542). The end date of Count 1 was extended to January 12, 2023, and Counts 5 and 6 remained the same. Defendant was not named in the other counts. On November 8, 2023, the Grand Jury for the Eastern District of Texas, Sherman Division, returned a 17-count Fourth Superseding Indictment, which included a forfeiture notice, against Defendant and 70 codefendants (Dkt. #1150). The end date of Count 1 was extended to November 8, 2023, and Counts 5 and 6 remained the same. Defendant was not named in the other counts.

On April 12, 2024, Defendant appeared, with counsel, before United States Magistrate Judge Aileen Goldman Durrett and entered a plea of guilty to Count 1 of the Third Superseding Indictment pursuant to a written and binding Plea Agreement (Dkt. #1516). *See* FED. R. CRIM. P. 11(c)(1)(C). On April 24, 2024, the undersigned adopted the United States Magistrate Report but deferred acceptance of the plea agreement pending review of the presentence report (Dkt. #1530). Then, on January 6, 2025, Defendant was sentenced by the undersigned to 120 months imprisonment and a term of supervised release of five years (Dkt. #1790).

On February 24, 2025, Defendant filed a Motion for Compassionate Release (Dkt. #1820). Defendant primarily asked the Court to consider whether the deteriorating condition of her father's health qualified as a "extraordinary and compelling reason" to warrant a reduction in her sentence (Dkt. #1820 at pp. 1–2). The Government issued its response recommending denial of this motion on March 10, 2025. Approximately two months later, on April 28, 2025, the undersigned denied Defendant's motion for failure to exhaust the required Administrative

Remedies with the BOP before filing her Motion for Compassionate Release and/or Reduction of Sentence to the Court (Dkt. #1895).

Defendant filed the current Motion for Compassionate Release on December 29, 2025 (Dkt. #2140). Since the filing of Defendant's previous Motion for Compassionate Release, her father has passed away (Dkt. #2140 at p. 4). As such, Defendant bases the current Motion on a number of alleged "extraordinary and compelling" reasons, including: (1) restrictions on access to medication within the correctional facility; (2) medical complications associated with COVID–19; (3) the need to help her elderly stepmother care for her minor daughter; (4) changes in the law; and (5) participation in various programs and classes since entering BOP custody (Dkt. #2140). The Government has not responded, and the Motion is ripe for adjudication.

## LEGAL STANDARD

**I.    18 U.S.C. § 3582(c)(1)(A)**

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A)    the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i)    extraordinary and compelling reasons warrant such a reduction; or

> (ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons] . . . ." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own

---

[1]  This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); and then *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923,

---

[2]    The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *Garrett*, 15 F.4th at 338).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam) (unpublished) ("Because the statutory language is mandatory . . . we must enforce this procedural rule . . . ."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend County. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

6

### III.    U.S.S.G.'s Policy Statement

#### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D).

First, whether the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "managed effectively by medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting

7

compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (per curiam) (unpublished) (citation modified).

Third, whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons*, 455 F. Supp. 3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

---

[3]  *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4]    *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5]    End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6]    *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7]    *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

(B)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "***immediate family member***" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D) (emphasis added).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) ("Without medical evidence [of the] father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Romano*, 707 F. Supp. 3d at 237–38. The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez*, No. 23-50404, 2024

11

WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).

### D.      Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to § 1B1.1." U.S.S.G. §§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.      Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. §§ 1B1.13(b)(1)–(4). *Id.*

§ 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing

Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.      The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *Rollins*, 53 F.4th at 358.

---

[8]  18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

14

## ANALYSIS

**I.      Defendant has met the exhaustion requirement.**

Before seeking relief from the Court, Defendant is bound by a threshold requirement to exhaust administrative remedies by submitting a request to the warden to move for compassionate release on their behalf, or by waiver following a "lapse of 30 days" after a request to the warden has been made. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)). If the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also McLean*, 2022 WL 44618, at *1 (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

Here, Defendant provides no evidence that she exhausted her administrative remedies before filing the present Motion (*See* Dkt. #2140). In Defendant's motion, she asserts that she had "written to [her] warden and [had] yet to hear back from him" (Dkt. #2140 at p. 1). However, Defendant provides no supporting evidence for this assertion (Dkt. #2140). Furthermore, Defendant does not state the date on which she allegedly submitted this request to her warden, so even assuming that such a request was submitted, it is unclear that Defendant waited for the required thirty days before filing this Motion (Dkt. #2140).

However, even though Defendant has provided no evidence that she successfully exhausted her administrative remedies before filing this Motion, the Government has waived any argument to the contrary by not responding to her Motion. *See Ward* 11 F.4th at 361; *see also McLean*, 2022 WL 44618, at *1; *United States v. Rey-Carrillo*, No. 4:17-CR-121-SDJ, 2025 WL 296609, at *5 (E.D. Tex. Jan. 24, 2025); *United States v. Mendoza*, No. 4:18-CR-188-SDJ, 2025 WL

2161426, at *4 (E.D. Tex. July 30, 2025). Defendant is therefore presumed to have exhausted her administrative remedies.

**II.    Defendant has not proved that "extraordinary and compelling" reasons warrant a sentence reduction.**

To show that "extraordinary and compelling" reasons warrant a sentence reduction, the Court considers whether Defendant's request for compassionate release is consistent with the policy statement of U.S.S.G. § 1B1.13. Defendant's arguments related to the existence of a relevant "extraordinary and compelling" reason primarily pertain to U.S.S.G. § 1B1.13(b)(1) and (3). None of these arguments satisfy Defendant's burden. Specifically, Defendant's claims concerning medical circumstances fail to express "extraordinary and compelling" reasons because they rely on general complaints that fall short of the severity required by § 1B1.13(1). Defendant's arguments concerning family circumstances similarly fail because Defendant has not established that her stepmother is incapacitated or that Defendant is the only one who could take care of her stepmother and minor daughter in the unfortunate event that incapacitation does occur. Without establishing the existence of "extraordinary and compelling" reasons on the basis of medical or family circumstances, Defendant's arguments concerning changes in the law and the rehabilitative efforts she has made since entering BOP custody do not, by themselves, establish "extraordinary and compelling" reasons within the meaning of § 3582(c)(1)(A)(i). As such, on the whole, Defendant fails to establish that "extraordinary and compelling" reasons exist warranting a sentence reduction.

### A.    Medical Circumstances

Defendant identifies two primary medical circumstances that she alleges constitute "extraordinary and compelling" reasons for a sentence reduction in accordance with 18 U.S.C.

§ 3582(c)(1)(A)(i). Both medical circumstances outlined by Defendant fall short of the standard laid out in § 1B1.13(b)(1).

> **1.      Defendant alleges a shortcoming in the Medication-Assisted Treatment Program.**

Defendant's first argument concerning medical circumstances centers on what she alleges to be a shortcoming in the correctional facility's implementation of the Medication-Assisted Treatment Program that has resulted in her being denied regulated access to suboxone, which is a substance used primarily to treat drug withdrawal symptoms (Dkt. #2140 at pp. 3–4). Defendant seeks to invoke two sections related to her medical circumstances: § 1B1.13(b)(1)(B) and § 1B1.13(b)(1)(C). However, neither section provides an extraordinary and compelling reason for early release, as Defendant's claims fall short of the threshold laid out in these sections.

Notably absent from Defendant's motion is a claim that she suffers from Opioid Use Disorder. Indeed, Defendant fails to mention or provide medical proof that she has been diagnosed with this disorder. Absence of this claim is notable, as Opioid Use Disorder is precisely the focus of the BOP Clinical Guidance cited by Defendant in support of claims regarding the alleged shortcomings of the Medication-Assisted Treatment Program (Dkt. #2140 at p. 3).

Rather, Defendant alleges that regulated access to suboxone through the Medication-Assisted Treatment Program would "help with" a number of conditions that she claims to suffer from, including daily struggles with addiction, depression, mental disorders, insomnia, and restless leg disorder (Dkt. #2140). Defendant does not, however, claim that these conditions are so severe that they "substantially diminish[] [her] ability . . . to provide self-care within the environment of a correctional facility and from which . . . she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Defendant merely asserts and complains of the existence of

these general conditions. Courts have found such general complaints, especially those which lack any medical proof of a relevant condition or any ongoing deterioration, to be insufficient to support early release. *See, e.g.*, *Ani*, 2024 WL 50775, at *4 ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *Dessaure-Outlaw*, 2024 WL 83327, at *2 (finding general complaints about surgery complication and diabetes insufficient); *see also United States v. Pirtle*, No. 4:20-CR-326-SDJ, 2025 WL 565823, at *6 (E.D. Tex. Feb. 20, 2025) (rejecting general complaints about commonplace medical conditions that lack medical proof in support); *United States v. Broadus*, No. 3:10-CR-0183-B-1, 2020 WL 3927395, at *3 (N.D. Tex. July 9, 2020) (refusing to consider whether asserted health problems constituted extraordinary and compelling reasons without documentation in support of those claims). As such, this claim fails.

As for Defendant's § 1B1.13(b)(1)(C) claim, although Defendant claims that suboxone can "take the place of four of [her] medications," she does not identify which medications she is referring to, nor does she claim that she is facing any difficulties with acquiring access to these medications (Dkt. #2140 at p. 4). When the defendant's conditions are "managed effectively by medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release." *Love*, 853 F. App'x at 987 (citation modified). Additionally, Defendant has provided no evidence that she is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided," nor has she provided evidence or even

asserted that, as a result of the correctional facility's failure to provide such care, she "is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). As such, this claim fails too.

### 2.    Defendant alleges that she suffers from "long-COVID."

Defendant's second argument concerning medical circumstances centers on a claim that she suffers from "long-COVID" as a result of contracting COVID-19 twice while being incarcerated (Dkt. #2140 at p. 4). Defendant further claims that this condition has "enhanced [her] asthma and breathing restrictions" (Dkt. #2140 at p. 4). As an initial matter, Defendant has provided no medical proof that she has been diagnosed with "long-COVID" or that she suffers from asthma and breathing restrictions. Even if such proof were provided, the Fifth Circuit and other courts have "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also Rodriguez*, 27 F.4th at 1098–1101 (denying relief where movant fearing COVID-19 suffered from heart failure). Additionally, the mere fact that a defendant contracts COVID-19, even in conjunction with preexisting health conditions, has been considered insufficient to establish an "exceptional and compelling" reason warranting compassionate release. *United States v. Phillips*, No. 1:17-CR-143, 2023 WL 5337428, at *10 (E.D. Tex. Aug. 18, 2023) (citing *United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020)). As such, this claim fails.

### B.    Family Circumstances

In addition to her claims concerning medical circumstances, Defendant generally alleges that her stepmother, who currently cares for her minor daughter, is "elderly" and "needs help" (Dkt. #2140 at p. 4). Under U.S.S.G § 1B1.13(b)(3), the Sentencing Commission has enumerated

four potential avenues through which a defendant's family circumstances may constitute an extraordinary and compelling reason for release. Importantly, each avenue turns on proof of death or incapacitation. "In the context of § 1B1.13(b)(3), one is incapacitated, whether due to injury or illness, when he is 'deprived of capacity or natural power,' such that he is unable to provide self-care." *Zermeno*, 2024 WL 4043445, at *4 (citation modified) (collecting cases). To prove incapacitation, Defendant must provide medical documentation beyond mere conclusory statements to this effect. Bare statements that one is elderly, even when accompanied by unsupported assertions that one needs assistance, simply "do not allow the court to make the necessary factual findings concerning . . . incapacity." *Id.* Defendant has provided no documentation concerning her stepmother and, as such, has failed to demonstrate that she meets the *Zermeno* definition of incapacity.

Moreover, Defendant has not shown that she is the only available caregiver for her stepmother in the event of incapacitation. According to Defendant's PSR, she has two brothers who appear to be potential caregivers for Defendant's stepmother. Defendant makes no mention of her brothers in the current Motion; however, in Defendant's previous motion for compassionate release, she noted that her older brother, Bryan Crowder, could not "commit the time" to care for their ailing father and that her younger brother, Nick Crowder, had a pending domestic violence charge "with/against" her stepmother (Dkt. #1820 at p. 2).

As Defendant fails to prove either that her stepmother is incapacitated or that she is the only available caregiver for her stepmother, Defendant fails to establish an "extraordinary and compelling" reason within the meaning of § 1B1.13(b)(3).

### C.    Defendant's Additional Claims

In addition to Defendant's most pertinent claims concerning the categories of "extraordinary and compelling" reasons delineated in U.S.S.G. § 1B1.13(b), Defendant raises two additional points that warrant consideration. First, Defendant claims that recent changes to U.S.S.G § 2D1.1 should result in a 2-4 level reduction of her total offense level (Dkt. #2140 at pp. 1–2). Second, Defendant notes that she has engaged in rehabilitative efforts since entering BOP custody (Dkt. #2140 at pp. 4–5). Neither of these claims establish that "extraordinary and compelling" reasons exist, and thus, these claims fail too.

First, Defendant devotes nearly half of her Motion to explaining changes to § 2D1.1 following the November 1, 2025, amendments (Dkt. #2140 at pp. 1–2). She further emphasizes the effect that these changes might have on the calculation of her total offense level (Dkt. #2140 at pp. 1–2). Defendant correctly notes, however, that the particular amendment affecting these changes was not classified as retroactive by the Sentencing Commission. As such, these changes may not be considered "for the purpose of determining whether an extraordinary and compelling reason exists" under § 1B1.13. U.S.S.G. § 1B1.13(c); s*ee also United States v. Johnson*, No. W-06-CR-125 (2), 2008 WL 11504867, at *4 (W.D. Tex. Aug. 12, 2008) ("This amendment, Amendment 709, has not been made retroactive by the Sentencing Commission. The policy statement issued in conjunction with amended USSG § 1B1.10 provides that the Court shall use only those amendments made specifically retroactive and 'shall leave all other guideline application decisions unaffected.'").

Second, although the Court commends Defendant's efforts to rehabilitate, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for the purposes of a sentence reduction under § 1B1.13. U.S.S.G. § 1B1.13(d); *Jean*, 108 F.4th at 279. Although a

21

defendant's efforts to rehabilitate may be considered in combination with other circumstances in determining whether a sentence reduction is warranted under U.S.C. § 3582(c)(1)(A), when the other reasons provided by a defendant in support of granting compassionate release fail, rehabilitation alone does not warrant a sentence reduction. *See, e.g.*, *United States v. Broadus*, No. 3:10-CR-0183-B-1, 2025 WL 963074, at *3 (N.D. Tex. Mar. 31, 2025) (holding that defendant's completion of multiple rehabilitative programs was insufficient on its own to establish extraordinary and compelling reasons); *Wilson*, 2024 WL 4267923, at *8 (holding that even if the court were to find that the defendant was rehabilitated, this fact, without more, would not merit compassionate release). As each of Defendant's claims have failed to establish "extraordinary and compelling" reasons warranting sentence reduction under § 3582(c)(1)(A), the fact that Defendant has engaged in rehabilitative efforts does not, on its own, establish such a reason.

While the Court hopes that Defendant will continue on the path to rehabilitation, the Court is of the opinion that none of Defendant's claims concerning medical circumstances, family matters, changes in the law, or her rehabilitative efforts warrant a sentence reduction.

## III.    The § 3553(a) Factors

Even if there were "extraordinary and compelling" reasons at hand, the sentencing factors under 18 U.S.C. § 3553(a) weigh against Defendant's release. The history and characteristics of Defendant and the nature of Defendant's conduct weigh heavily in the Court's decision. *United States v. Lloyd*, No. CR 15-201, 2020 WL 4601630, at *5 (E.D. La. Aug. 11, 2020). Defendant pleaded guilty to Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine in violation of 21 U.S.C. § 846 (Dkt. # 1516). "As Courts have consistently recognized, the proliferation of dangerous addictive narcotics is a significant public and societal harm." *United States v. Bolton*, No. 4:15-CR-207-SDJ, 2025 WL 1520621, at *1 (E.D. Tex. May 22,

2025) (quoting *United States v. Rodriguez*, No. 17-CR-1596, 2023 WL 1934326, at *3 (S.D. Cal. Feb. 10, 2023)). As such, the nature of Defendant's offense is clearly serious.

Further, Defendant's criminal history weighs against a sentence reduction. As noted in the PSR, Defendant has a considerable criminal history, including five prior felonies, three of which involved controlled substance offenses. Additionally, a look at Defendant's criminal record reveals that she has committed offenses while under supervised release in the past and that she committed the offense for which she is presently imprisoned while under a criminal justice sentence. *See Lloyd*, 2020 WL 4601630, at *5 (justifying denial of the defendant's request for sentence reduction in part on the fact that the defendant had a history of committing offenses while on supervised release).

Although the Court commends Defendant for participating in vocational and recovery programs in her continued pursuit of rehabilitation, after weighing the factors in 18 U.S.C. § 3553(a), the Court finds that granting Defendant's release would not reflect the seriousness of her offense, promote respect for the law, provide just punishment for her offense, nor adequately deter criminal conduct or protect the public. *Chambliss* 948 F.3d at 693. Accordingly, Defendant's Motion must be denied.

### CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #2140) is hereby **DENIED**.

**IT IS SO ORDERED**.
**SIGNED this 23rd day of June, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE
23